**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**William C. Goldwair, PhD.,**

 **Case No. C2-04-977**
 **JUDGE GREGORY L. FROST**
 **Plaintiff,** **MAGISTRATE JUDGE ABEL**
 **v.**

**Ohio Department of Youth Services, *et al.*,**

 **Defendants.**


**OPINION & ORDER**

Plaintiff William Goldwair ("Goldwair") alleges that Defendants Ohio Department of

Youth Services ("DYS"), Thomas Strickrath, DYS Director ("Strickrath"), and James York,

DYS Bureau Chief discriminated against him on the basis of his race in violation of 42 U.S.C. §

§ 1981 & 1983, and 42 U.S.C. § 2000e-5(f). (Docs. # # 14, 29, 36). Defendants move for full

summary judgment. (Doc. # 25). The matter is fully briefed and ripe for a decision. (Docs. # #

30, 33).


**BACKGROUND**

Goldwair is an African-American male. (Doc. # 14 ¶ 2). Goldwair was hired by

Defendant DYS in 1983. (Doc. # 15 ¶ 4). Defendant DYS is the juvenile correctional system for

the State of Ohio and is therefore a state agency. Strickrath is the Director of DYS. (Doc. # 14).

York is the DYS Bureau Chief. *Id.* at ¶ 3.

Goldwair was promoted to an Education Administrator 1 ("EA1") in 1989 and works in

the DYS' Bureau of Education. (Doc. # 14 ¶ 4; Goldwair Dep. 23, 30). His job duties primarily

entail overseeing DYS high schools within  a certain geographical area of the state to ensure that

the schools comply with the terms of a grant from the United States Department of Education

under Title I.  Goldwair Dep. 30.   Throughout his tenure with DYS, his job duties have both

expanded and retracted.   *Id.* at 30-36; 48-49, 82-85; York Dep. 33-65, 122; Goldwair Ans.

Interog. 6.  As a result of his increased responsibilities, Goldwair asked his supervisors to

reclassify him from an EA1 into an Education Administrator 2 ("EA2")  position which would

result in an increase in pay.  Goldwair Dep. 234-36.  Each supervisor declined to reclassify him.

*Id.*; Doc. # 14 ¶ 10; York Dep. 61-62.  DYS did reclassify Mark Powell's ("Powell") position

from and EA1 to an EA2 in 1999.  Powell is a white male.  (Doc. # 14 ¶ 10).

In mid-2001, DYS posted an opening for a vacant EA2 position.  The individual hired for

that job was to be responsible for curriculum.  Goldwair Dep. 50-57.  Goldwair did not apply for

the position.  *Id.* at 54-59.  DYS hired Lisa Crider, a white female,  for the job in August 2001.

*Id.*; *see also* Doc. # 29 ¶ 8.

In mid-2005, Goldwair applied for a vacant EA2 position within DYS that was entitled

"Administrator, Federal Programs."  (Doc. # 29 ¶ 2).  DYS interviewed him and several others

but hired Mary Sidman ("Sidman") for the position.  Goldwair Dep. 99.  Sidman is a white

female.  (Doc. # 14 ¶ 2).

Goldwair filed a charge of discrimination with the Ohio Civil Rights Commission

("OCRC") and the Equal Employment Opportunity Commission ("EEOC") on May 5, 2003.

(Doc. # 15 ¶ 1; Doc. #  25 at 14).  The OCRC investigated, found no probable cause, and

dismissed the charge on March 11, 2004.  (Doc. # 25 at 1).  The EEOC issued a right to sue letter

on July 12, 2004.  (Doc. # 15 ¶ 1).

Goldwair instituted the instant action on October 8, 2004.  (Doc. # 1).  He alleges that Defendants impermissibly denied his requests for reclassification as well as his application for the EA2 position on the basis of his race in violation of 42 U.S.C. § § 1981, 1983 and 42 U.S.C. § 2000e et seq.  (Doc. # 14, Doc. # 29).  Defendants filed an Answer denying all of Goldwair's allegations.  (Doc. # 15).  This motion followed.  (Doc. # 25).

## STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56©.  The Court must therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case.  *See Muncie Power Prods., Inc. v. United Techs. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

In viewing the evidence, the Court must draw all reasonable inferences in favor of the nonmoving party, which must set forth specific facts showing that there is a genuine issue of material fact for trial.  *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234 (6th Cir. 2003).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Muncie*, 328 F.3d at 873 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  Consequently, the central issue is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided

3

that one party must prevail as a matter of law.' "  *Hamad*, 328 F.3d at 234-35 (quoting *Anderson*, 477 U.S. at 251-52).  However, in ruling on a motion for summary judgment, "a district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim."  *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989).

## DISCUSSION

Goldwair asserts two claims.  First, Goldwair argues that Defendants violated § § 1981, 1983, and Title VII by failing to reclassify him from an EA1 to an EA2 because of his race.  (Doc. # 14, Doc. # 29; Doc. # 30 at 16).  Second, Goldwair posits that Defendants did not promote him because of his race in violation of those same statutes.  (Doc. # 14; Doc. # 29; Doc. # 30 at 25).  Defendants deny both of Goldwair's claims.  (Docs. # # 15, 25, 33).  For ease of reference, the Court shall separately analyze the statutory basis for Goldwair's claims.

## I.    SECTION 1981

### A.    LANGUAGE

The first statutory basis for the Court's federal question jurisdiction lies in Section 1981.  (Doc. # 14, Doc. # 29).   That section generally prohibits discrimination based on race in the making and enforcing of contracts.[1]  *Amini v. Oberlin College*, 440 F.3d 350 (6th Cir. 2006).

---

[1] Goldwair's Amended Complaint as well as his memorandum in opposition fail to refer to the contract that is the basis for his section 1981 claim.  (Docs. # # 14, 29, 30).  However, it appears that Goldwair is an at-will employee.  This is important because this Court has held that § 1981 applies to at-will employment relationships in Ohio.  *Williams v. United Dairy Farmers*, 20 F. Supp. 2d 1193, 1202 (S.D. Ohio 1998).   Moreover, the Sixth Circuit held that "§ 1981 does, in fact, apply to at-will employment relationships in Ohio."  *Aquino v. Honda of Am., Inc.*, 158 Fed. Appx. 667, 674 (6th Cir. 2005).

4

The statute also prohibits racial discrimination in the performance, modification, and termination of contracts.  *Ross v. City of Memphis*, 394 F. Supp. 2d 1024, 1032 (D. Tenn. 2005).  Section 1981 specifically provides:

> (a) Statement of equal rights. All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

> (b) "Make and enforce contracts" defined. For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

> © Protection against impairment. The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

42 USCS § 1981.  A plaintiff may state a cause of action under Section 1981 for failure to promote.  *Walcott v. City of Cleveland*, 123 Fed. Appx. 171, 176 (6th Cir. 2005); *Campbell v. City of Dayton*, 1991 WL 1092501, *9 (S.D. Ohio Dec. 9, 1991).  In addition, the Court sees no reason why it should not apply the same analysis to Goldwair's § 1981 failure to reclassify claims.

## B.     STATUTE OF LIMITATIONS

Goldwair's Amended Complaint fails to set forth the time frame for his claims.  (Doc. # 14, Doc. # 29).  During his deposition, however, Goldwair described alleged discriminatory acts

as far back as 1997 through 2005.  (Goldwair Dep. 36, 40-48, 68-69, 90-93, 100-103, 147-148, 177-188, 213-219).  Defendants assert that Goldwair's § 1981 claims prior to October 8, 2000 are barred under the section's statute of limitations.  (Doc. # 25 at 15).  Goldwair fails to object to this assertion in his memorandum in opposition to Defendants' motion for summary judgment.  (Doc. # 30).

Section 1981 has a four (4) year statute of limitations.  *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 371 (2004) (citing 28 U.S.C. § 1658).  Goldwair's claims are based upon a failure to reclassify and a failure to promote; thus, he does not assert that the "continuing violation" doctrine is applicable.[2]  (Doc. # 30).  In fact, Goldwair admits that he is not claiming hostile work environment.  (Doc. # 30 at 13).  That admission serves to thwart the application of the only exception to the doctrine.  *Sharpe*, 319 F.3d at 267.  Accordingly, because Goldwair filed his Complaint on October 8, 2004, the Court holds that the applicable statute of limitations bars all of his Section 1981 claims prior to October 8, 2000.  (Docs. # # 14, 25, 29).

## C.    IMMUNITY

Goldwair's remaining claims under Section 1981 face another obstacle: immunity.  (Doc. # 25 at 15-16).  Defendants assert that Goldwair's claims under that statute against DYS and Strickrath and York in their official capacity are barred by the doctrine of immunity.  *Id.*  Goldwair failed to address this issue in his memorandum in opposition.  (Doc. # 30).

Preliminarily, the Court must first discern whether Goldwair is suing the Strickrath and

_____

[2] See *Sharpe v. Cureton*, 319 F.3d 259, 267 (6th Cir. 2003) (describing the doctrine and holding that when an "employee seeks redress for discrete acts of discrimination or retaliation, the continuing violation doctrine may not be invoked to allow recovery for acts that occurred outside the filing period").

York in their official or individual capacities, or both.  Goldwair's Amended Complaint does not mention capacity.  (Docs. # # 14, 29).  In *Wells v. Brown*, 891 F.2d 591 (6th Cir. 1989), the Sixth Circuit held that a plaintiff must set forth clearly in his pleading that he is suing state defendants in their individual capacity for damages, or the court will assume the defendants are being sued in their official capacity only.  Later, the court explained that the rationale for this pleading requirement was to afford state officials sufficient notice that they could be held personally liable for the payment of any damage award.  *Pelfrey v. Chambers*, 43 F.3d 1034, 1038 (6th Cir. 1995).

However,  the *Pelfrey* Court did not make the assumption of official capacity permitted by *Wells* even though the Pelfrey plaintiff  did not specify in his complaint in what capacity he was suing the defendants.   The court distinguished the decision in *Wells* by explaining that the plaintiff had filed a motion one month after the complaint was filed that made clear his intention to sue the defendants in their individual capacity.  *Id.* at 1038.  Based on this motion, the court concluded that the defendants were given sufficient notice that they were being sued in their individual capacity.  *Id.*

The Sixth Circuit has relied on its decision in *Pelfrey* to hold that even though the plaintiff did not specify capacity in his complaint, the defendant was given sufficient notice that he was being sued in his individual and official capacities through the plaintiff's reply to defendant's motion for summary judgment.  *Spurlock v. Whitley*, 971 F. Supp. 1166, 1186 (M.D. Tenn. 1997) (citing *Abdur-Rahman v. Michigan Department of Corrections*, 65 F.3d 489, 491 (6th Cir. 1995)).

Such notice is lacking here. As noted above, Goldwair's complaint fails to specify capacity.  Furthermore, Goldwair has not filed a motion or any filing with the Court that

7

discusses whether he is suing Strickrath and York in their individual or official capacities, or both. In addition, his memorandum in opposition to Defendants' motion for summary judgment failed to even mention this issue. Consequently, the Court utilizes *Wells* to conclude that because Goldwair has neglected to provide any notice to Strickrath and York that they may be, or are being, sued in their individual capacities, those Defendants are being sued in their official capacities only. This conclusion is buttressed by the fact that Goldwair's Amended Complaint identifies Strickrath by his title and utilizes his business address, as well as by the fact that the pleading only refers to York's official actions. (Docs. # 14, 29). This holding shall apply to the immunity analysis that transpires below for each of the statutes at issue.

Having determined that Strickrath and York are being sued in their official capacity only, the Court now focuses on the issue of immunity as it pertains to each Defendant relative to Goldwair's § 1981 claims.

### 1. Claims against DYS

It is well-settled law that plaintiffs cannot directly sue a state or a state agency in federal court under § 1981 pursuant to the Eleventh Amendment. *Johnson v. University of Cincinnati*, 215 F.3d 561, 571 (6th Cir.), cert. denied, 531 U.S. 1052 (2000); *see also Hafford v. Seidner*, 183 F.3d 506 (6th Cir. 1999) (holding § 1981 claim against state agency barred by Eleventh Amendment); *Quern v. Jordan*, 440 U.S. 332 (1979) (holding § 1983 does not override Eleventh Amendment); *Higginbotham v. Ohio Dep't of Mental Health*, 412 F. Supp. 2d 806 (S.D. Ohio 2005). Thus, DYS is entitled to summary judgment on Plaintiff's remaining § 1981 claims arising on or after October 8, 2000. (Doc. # 25).

### 2. Claims against Strickrath and York

8

This Court has held that claims asserted under § 1981 against individual state defendants in their official capacities are barred. *Higginbotham*, 412 F. Supp. 2d 806. Thus, Strickrath and York are entitled to summary judgment on Goldwair's remaining § 1981 claims against them. *Id.* (Doc. # 25).

## II.   SECTION 1983

### A.   LANGUAGE

Section 1983 proclaims:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, . . . .

42 U.S.C. § 1983.

### B.   STATUTE OF LIMITATIONS

As noted above, Goldwair's Amended Complaint fails to set forth the time frame for his claims but his deposition testimony described alleged discriminatory acts as far back as 1997 through 2005. (Docs. # 14, 29; Goldwair Dep. 36, 40-48, 68-69, 90-93, 100-103, 147-148, 177-188, 213-219). Thus, Defendants assert that § 1983's statute of limitations prevents some of Goldwair's claims from proceeding. (Doc. # 25 at 14-16). Goldwair did not respond to this argument in his motion for summary judgment. (Doc. # 30).

The Sixth Circuit held that "the appropriate statute of limitations for 42 U.S.C. § 1983 civil rights actions arising in Ohio is contained in Ohio Rev. Code Ann. § 2305.10, which requires that actions for bodily injury be filed within two years after their accrual." *Banks v. City of Whitehall*, 344 F.3d 550, 553 (6th Cir. 2003). Again, Goldwair filed his Complaint on

9

October 8, 2004.  As a result, Defendants are entitled to summary judgment on any of Goldwair's § 1983 claims that took place after October 8, 2002. (Doc. # 25).

### C.    IMMUNITY

Next, Defendants raise the defense of immunity to Goldwair's remaining claims against all of the Defendants under Section 1983.  (Doc. # 25 at 15-16).  Goldwair's memorandum in opposition did not address immunity.  (Doc. # 30).

### 1.    DYS

According to the Sixth Circuit, Goldwair's claims against DYS cannot be maintained via § 1983 because DYS is a state agency, and state agencies, pursuant to the Eleventh Amendment, are immune from suit under § 1983.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989); *see also Johnson*, 215 F.3d at 571.  DYS is therefore entitled to summary judgment on Goldwair's § 1983 claims.  (Doc. # 25).

### 2.    Strickrath and York

The Court previously determined that Strickrath and York are being sued in their official capacities only.   Goldwair seeks only monetary relief.  (Doc. # 14 at ¶ "Wherefore").  In addition, Ohio has not waived its Eleventh Amendment immunity for § 1983 suits.  *Wolfel v. Morris*, 972 F.2d 712, 718-719 (6th Cir. 1992).  According to the Sixth Circuit, "a suit for damages against a state official in his or her official capacity cannot be maintained pursuant to § 1983" because " 'state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.'  As such, it is no different from a suit against the state itself." *Wolfel,* 972 F.2d at 718-719 (quoting *Brandon v. Holt*, 469 U.S. 464, 471 (1985)).  Thus, the Court holds that Strickrath

and York are entitled to summary judgment on Goldwair's § 1983 claims against them.  (Doc. #

25).

## III.    TITLE VII

### A.    STATUTORY LANGUAGE

Lastly, Title VII states:

> (a) Employer practices. It shall be an unlawful employment practice for an
> employer--
> (2) to limit, segregate, or classify his employees or applicants for employment in
> any way which would deprive or tend to deprive any individual of employment
> opportunities or otherwise adversely affect his status as an employee, because of
> such individual's race, color, religion, sex, or national origin.

42 USCS § 2000e-2.

### B.    STATUTE OF LIMITATIONS

Defendants also move the Court to dismiss some of Goldwair's Title VII claims on the

basis of the act's statute of limitations.  (Doc. # 25 at 14-16).  Defendants' arguments in support

of this argument are without response from Goldwair.  (Doc. # 30).

Pursuant to the statutory language of Title VII, the applicable statute of limitations begins

to run from the date of "the alleged unlawful employment practice[.]" 42 U.S.C. § 2000e-5(e)(1).

Title VII has a dual statute of limitations, which the Sixth Circuit has explained as follows:

> Usually, if the alleged discrimination occurred more than 180 days prior to the
> plaintiff's filing of an EEOC charge, claims implicating these actions are barred.
> However, if the alleged unlawful practice occurs in a "deferral state," in this case
> Ohio, which has enacted its own laws prohibiting discrimination in employment,
> the plaintiff must file suit within 300 days of the alleged discriminatory act.

*Amini v. Oberlin College*, 259 F.3d 493, 498 (6th Cir. 2001) (quoting *Alexander v. Local 496,*

*Laborers' Int'l Union of N. Am.*, 177 F.3d 394, 407 (6th Cir. 1999), cert. denied, 528 U.S. 1154 (2000) (citation omitted)). The alleged unlawful employment practice in this case did occur in Ohio, a deferral state, and thus the 300-day period in which to file an EEOC charge under Title VII applies.

Goldwair filed his EEOC charge on May 5, 2003. (Doc. # 15 ¶ 1; Doc. # 25 at 14). Accordingly, the 300-day window closed effective July 1, 2002. Any Title VII claims Goldwair attempts to assert prior to that date are barred by applicable statute of limitations and Defendants are entitled to summary judgment on those claims. (Doc. # 25).

### C.    IMMUNITY

Similar to their treatment of Goldwair's § § 1981 and 1983 claims, Defendants raise the issue of immunity. (Doc. # 25 at 15-16 n.3).

### 1.    DYS

DYS does not assert that it is immune from Title VII claims pursuant to the Eleventh Amendment for good reason. (Doc. # 25 at 15-16 n.3). The United States Supreme Court, as well as the Sixth Circuit, have held that " 'Congress acted validly under its Fourteenth Amendment Enforcement Clause powers to abrogate state sovereign immunity to Title VII claims.' " *Cox v. Shelby State Cmty. College*, 48 Fed. Appx. 500, 504-505 (6th Cir. 2002) (quoting *Fitzpatrick v. Bitzer*, 427 U.S. 445 (1976)). Accordingly, the Eleventh Amendment simply does not apply to Title VII claims and Goldwair's Title VII claims against DYS may proceed.

### 2. Strickrath and York

Defendants correctly point out that controlling Sixth Circuit precedent is that individual Defendants cannot be held personally liable under Title VII because they are not "employers." (Doc. # 25 at 15 n.3 (citing *Wathen v. General Electric Co.*, 115 F.3d 400, 405 (6th Cir. 1997)). But that is irrelevant because Goldwair sues Strickrath and York in their official capacities. *See supra*. Rather, the pertinent question is whether Strickrath and York are immune from claims brought against them under Title VII in their official capacities.

The answer to that question is no. This Court previously held that a public official may be sued under Title VII in his or her official capacity. *Dyer v. Radcliffe*, 169 F. Supp. 2d 770, 774 (S.D. Ohio 2001) (citing Johnson, 215 F.3d at 571); *see also Cox*, 48 Fed. Appx. at 505 (citing *Fitzpatrick*, 427 U.S. at 456). Thus, Defendants' motion for summary judgment on Goldwair's Title VII claims against Strickrath and York in their official capacities is not well taken. (Doc. # 25).

### D. ANALYSIS OF GOLDWAIR'S TITLE VII CLAIMS

Essentially, Goldwair asserts two Title VII claims against DYS, Strickrath, and York: failure to reclassify and failure to promote. (Docs. # # 14, 29, 30). Defendants maintain that those claims must be dismissed because Goldwair is unable to satisfy his *prima facie* burden. (Doc. # 25 at 18-28). In response, Goldwair asserts that he can establish his *prima facie* case with respect to his failure to reclassify claim and that he can show sufficient evidence regarding his failure to promote claim. (Doc. # 30 at 16, 25).

### 1. Failure to reclassify

Goldwair's first claim is that Defendants failed to reclassify him from an EA1 to an EA2 because of his race.  (Doc. # 30 at 16-25).  Defendants counter that summary judgment is proper on this claim because Goldwair cannot establish his *prima facie* burden. (Doc. # 25 at 18-26; Doc. # 33 at 2-9).  Defendants' arguments prevail.

### a.    Method of analysis

Both parties acknowledge that, because Goldwair relies on circumstantial evidence, this case is governed by the familiar burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  (Doc. # 25 at 16-18; Doc. #  30 at 14-15).  Under the *McDonnell Douglas* approach, an employee has the initial burden of establishing a *prima facie* case of unlawful employment discrimination by a preponderance of the evidence.  *Id.* at 802.

In order to prove a *prima facie* case for failure to reclassify, the employee may prove that: "(1) positions held by comparable white employees were reclassified and upgraded; or (2) the difference in the grades was the result of racial considerations."  *Johnson v. Auburn Univ.*, 403 F. Supp. 2d 1101, 1109 (M.D. Ala. 2005) (citing *Moore v. Devine*, 767 F.2d 1541, 1546 (11th Cir. 1985)). " 'The plaintiff and the employee [h]e identifies as a comparator must be similarly situated in all relevant respects. The comparator must be nearly identical to the plaintiff to prevent courts from second-guessing a reasonable decision by the employer.'" *Johnson*, 403 F. Supp. 2d at 1109 (quoting *Wilson v. B/E Aerospace, Inc*., 376 F.3d 1079, 1091 (11th Cir. 2004)).

If the employee establishes a *prima facie* case, the burden then shifts to the employer to rebut the presumption by articulating a legitimate, non-discriminatory reason for its employment action.  *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 n.2 (6th Cir. 2000).   After a plaintiff

14

creates a presumption of discrimination by establishing a *prima facie* case, a defendant may

rebut the presumption by proffering a legitimate, nondiscriminatory reason for its decision. *Id.*

At this point, the employer has the burden of production, not of persuasion, and thus does not

have to persuade a court that it was actually motivated by the reason advanced. *See, e.g., Texas*

*Dep't of Cmty Affairs v. Burdine*, 450 U.S. 248, 253-55 (1981); *McDonnell Douglas*, 411 U.S.

at 802. The plaintiff then bears the burden of showing that the defendant's proffered reason is

pretextual. *Dews*, 231 F.3d at 1021.

A plaintiff can demonstrate pretext by showing that the proffered reason (1) has no basis

in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient

to warrant the challenged conduct. *Id.* If a plaintiff can show that the defendant's proffered,

nondiscriminatory reason is pretextual, the trier of fact may infer discrimination. Nevertheless,

the ultimate burden of proof to show discrimination remains on the plaintiff at all times. *Id.*

### b.      Powell

Goldwair's *prima facie* burden requires Goldwair to prove that similarly situated

individuals who are not African-American were reclassified to an EA2 position. To satisfy this

requirement, Goldwair points to Powell. (Doc. # 30 at 17). Regarding Powell, the parties'

dispute focuses on whether he and Goldwair were similarly situated. Defendants admit that

Powell was reclassified from an EA1 to an EA2 in 1999. (Doc. # 25 at 22). However,

Defendants maintain that Powell was not similarly situated to Powell because former DYS

Superintendent Renee Sneldon reclassified Powell, not York. (Doc. # 30 at 22-23). Goldwair

counters that "employees' immediate supervisors need not be the same for the purpose of

establishing that the employees are similarly situated." (Doc. # 30 at 19) (citing *McMillan v.*

*Castro*, 405 F.3d 405, 413 (6th Cir. 2005)).

As noted above, " 'The plaintiff and the employee [h]e identifies as a comparator must be similarly situated in all relevant respects. The comparator must be nearly identical to the plaintiff to prevent courts from second-guessing a reasonable decision by the employer.' " *Johnson*, 403 F. Supp. 2d at 1109 (quoting *Wilson,* 376 F.3d at 1091).  Unfortunately for Goldwair, Powell is not a similarly situated comparator because different decision-makers and supervisors were involved in the decision to reclassify Powell.  Specifically, Sneddon reclassified Powell, not York.  According to the Eleventh Circuit, "Differences in treatment by different supervisors or decision makers can seldom be the basis for a viable claim of discrimination."  *Silvera v. Orange County Sch. Board*, 244 F.3d 1253, 1261 n.5 (11th Cir. 2001) (citing *Jones v. Gerwens*, 874 F.2d 1534, 1541 (11th Cir.1989) ("Courts have held that disciplinary measures undertaken by different supervisors may not be comparable for purposes of Title VII analysis.")); *see also Cooper v. City of N. Olmsted*, 795 F.2d 1265, 1271 (6th Cir.1986) ("Although a change in managers is not a defense to claims of race or sex discrimination, it can suggest a basis other than race or sex for the difference in treatment received by two employees.").  Thus, the Court concludes that the different decision makers involved prevent Powell from being a valid comparator to Goldwair.  Because Goldwair and Powell were not similar in all relevant respects, the Court holds that Goldwair has failed to satisfy the first method for establishing his *prima facie* case.

Goldwair is also unsuccessful in utilizing the alternative method of establishing his *prima facie* case: that any difference in treatment was because of his race.  Put simply, Goldwair does not identify *any* evidence in the record suggesting that Powell was reclassified because he is

16

white and Goldwair was not classified because he is black. As such, Goldwair's failure to establish his prima facie burden entitles Defendants to summary judgment on his Title VII failure to reclassify claim. (Doc. # 25).

### 2. Failure to promote

#### a. Method of analysis

With respect to his failure to promote claim, Goldwair presents no direct evidence of discrimination. (Doc. # 30 at 14-15). Thus, the Court shall examine Goldwair's circumstantial evidence under the familiar burden-shifting framework established in *McDonnell Douglas* and *Burdine* which is concisely summarized as follows:

> To establish a *prima facie* claim of racial discrimination based on a failure to promote under Title VII of the Civil Rights Act of 1964, a plaintiff generally must demonstrate that: (1) he is a member of a protected class; (2) he applied and was qualified for a promotion; (3) he was considered for and denied the promotion; and (4) other employees of similar qualifications who were not members of the protected class received promotions. After a plaintiff creates a presumption of discrimination by establishing a *prima facie* case, a defendant may rebut the presumption by proffering a legitimate, nondiscriminatory reason for its decision. The plaintiff then bears the burden of showing that the defendant's proffered reason is pretextual.
>
> A plaintiff can demonstrate pretext by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct. If a plaintiff can show that the defendant's proffered, nondiscriminatory reason is pretextual, the trier of fact may infer discrimination. Nevertheless, the ultimate burden of proof to show discrimination remains on the plaintiff at all times.

*Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 n.2 (6th Cir. 2000).

#### b. Crider

17

Initially, the Court notes that the parties treat Crider's position within the framework of a failure to reclassify claim (Doc. # 25 at 3-4; Doc. # 30 at 4-5; Doc. # 33 at 5-6). Such treatment is improper because of the Ohio Administrative Code's ("OAC") definitions of "promotion" and "reclassification." Specifically, the OAC defines "promotion" as "the movement of an employee for one position to a vacant position which is assigned to a different classification and a higher pay range." OAC § 123:1-47-01(A)(69). In contrast, the OAC describes "reclassification" as "the act of changing the classification of an existing position." *Id.* at § 123:1-47-01(A)(73). The position at issue was vacant and was labeled as an EA2. York Dep. 39-40; Goldwair Dep. 50-57. Consequently, the Court will address Goldwair's Title VII failure to reclassify claim as it relates to Crider as a Title VII failure to promote claim.

At the time of York's arrival at DYS, there was a vacant EA2 position for a curriculum director. Goldwair posits he and Crider were similarly situated because they were both vying for an that position and that they both were in charge of at least one statewide program. (Doc. # 30 at 19). Goldwair's focus, then, is on the fourth and final element of the *prima facie* element. Defendants correctly indicate that Goldwair did not apply for that EA2 position. (Doc. # 25 at 3-4; Doc. # 33 at 5). In contrast, Defendants level their attention on Goldwair's inability to establish the second prong of his *prima facie* burden - that he applied for the position at issue.

Goldwair asserts that he did not see the job posting in the DYS central office that described the position as an EA2. Goldwair Dep. 54-57. Goldwair does not argue that the job was not posted. In addition, Goldwair admitted that he was aware of the position and that he did not apply for it. *Id.* at 54-59. Goldwair further admits that he was not qualified for the position. Goldwair Dep. 57-59.

To establish his failure to promote claim, Plaintiff must be able to show that he "applied for" and was "considered for" the promotion at issue, i.e. the EA2 curriculum position.  *See Dews*, 231 F.3d at 1020-1021; *see also Donahoo v. Ohio Dep't of Youth Servs*., 237 F. Supp. 2d 844, 863 (N.D. Ohio 2002).  The Court finds that the undisputed evidence via Goldwair's admissions that he knew about, but did not apply for, the position shows that Plaintiff did not apply for the vacancy at issue.  His admitted failure to apply therefore prevents him from establishing the second *prima facie* element and entitles Defendants to summary judgment on his Title VII failure to reclassify claim as it relates to Crider.  (Doc. # 25).

### c.      Sidman

In mid-2005, Defendants posted a job opening for an EA2 position that would oversee all of DYS' federal programs.  Goldwair Dep. 147-148; Doc. # 29 at ¶ 2.  Goldwair has no problem establishing his *prima facie* burden with respect to that position–Defendants concede that: (1)  he is a member of a protected class; (2) he applied and was qualified for the position; (3) he was considered for and denied the promotion; and (4) Sidman was awarded the position.  (Doc. # 25 at 8-10; Doc. # 33 at 9-10).   Instead, the parties dispute whether Goldwair can establish that Defendants' stated reason for selecting Sidman was pretextual.  (Doc. # 30 at 25-26; Doc. # 33 at 9-10).

Because Goldwair cleared the *prima facie* hurdle, the burden shifts to Defendants to proffer a legitimate, nondiscriminatory reason for its decision.  *Dews*, 231 F.3d at 1020-1021.  To satisfy their burden, Defendants state that the vacant position was designed to oversee all of DYS' federal programs, which included Title I, vocational education, special education, a federal library grant, and transitional programs.  (Doc. # 25 at 8 citing Goldwair Dep. 148; York Dep.

90).   Both Goldwair and Sidman applied for the job and both were EA1's at the time they filed

their applications.  *Goldwair* Dep. 148; York Dep. 84, 108.  Goldwair's EA1 position dealt with

Title I; Sidman's EA1 position dealt with special education.

In his attempt to demonstrate pretext, Goldwair argues that Defendants' proffered reason

York believed that Goldwair and Sidman were equally qualified for the job.  York Dep.

91, 101.  York, Powell, Crider and Richard Workman, DYS' treasurer, interviewed both Sidman

and Goldwair.  Goldwair Dep. 111, 151.   Each candidate was asked the same questions.  York

Dep. 84, 108.  Thereafter, the hiring panel unanimously voted to hire Sidman for the position.

York Dep. 83.  Defendants state that they chose Sidman because she brought different

qualifications to the table–for example, she served on the Ohio literacy council, she had previous

experience working with transitional services, and she believed that the best method for

delivering Title I programs and services was "school-wide."  York Dep. 102-104, 137, 155-56.

Sidman's vision for Title I delivery coincided with York's belief of how the services should be

delivered; that is, York believed that the "school-wide" approach was the way to go while

Goldwair indicated in his interview that he favored the "targeted-assistance" method, which

DYS had utilized for some time.  York Dep. 83-85, 101-110, 155-56.   With this reason in mind,

and noting that "[t]he factfinder may not focus on the soundness of the employer's business

judgment," the Court concludes that Defendants have fulfilled their burden of producing a

legitimate, non-discriminatory reason for hiring Sidman instead of Goldwair.  *Bush v. Am.*

*Honda Motor Co.*, 227 F. Supp. 2d 780, 798 (S.D. Ohio 2002) (quoting *Wilkins v. Eaton Corp*.,

790 F.2d 515, 521 (6th Cir. 1986)).

In his attempt to demonstrate pretext, Goldwair argues that Defendants' proffered reason

did not actually motivate the conduct he challenges.  Stated simply, Goldwair maintains that

Defendants did not hire him because he is black, not because he was less qualified than Sidman. (Doc. # 30 at 25-26). To support his argument, Goldwair basically argues that Sidman was not qualified for the position because she performed poorly with respect to her special education duties while she was a EA1. (Doc. # 30 at 26). In contrast, Defendants assert that Sidman had no authority to address the root cause of the problems: lack of staffing. (Doc. # 33 at 9 citing Workman Dep. 25-44).

The only evidence Goldwair relies on to bolster his argument is an unauthenticated report allegedly prepared by an investigator hired by DYS to look into the problems the special education program was having. (Doc. # 30 at 9-11, 27-28). As Defendants point out, however, the report is inadmissible hearsay. (Doc. # 33 at 9-10). When ruling on a motion for summary judgment, the court may not not consider unauthenticated documents. *Fiordalisi v. Zubek*, 342 F. Supp. 2d 737, 741 (N.D. Ohio 2004) (citing *Saleh v. City of Warren*, 86 Fed. Appx. 866, 868 (6th Cir. 2004) (refusing to consider unauthenticated correspondence and city council ordinances and resolutions submitted in opposition to summary judgment motion)). Without that report, Goldwair's argument crumbles for an absolute lack of evidentiary support.

Even assuming, arguendo, that the report was admissible, Goldwair's contention, reduced to its essence, is that he was better qualified for the position than Sidman. Goldwair makes that argument while admitting that Sidman was qualified for the job, and further admits that he would have needed training to adequately handle the special education aspects of the job. (Goldwair 149-151, 164-67). Furthermore, the Sixth Circuit held that Goldwair's perceptions of his qualifications and competence is irrelevant; rather, the focus is on the Defendants' motivation for selecting Sidman over him. *Wrenn v. Gould*, 808 F.2d 493, 502 (6th Cir. 1987). Goldwair

21

points to *no* evidence that DYS was motivated by discriminatory animus.  Consequently, he fails to establish pretext and Defendants are entitled to judgment as a matter of law on Goldwair's Title VII failure to promote claim.  (Doc. # 25).

## CONCLUSION

For the reasons set forth above, the Court GRANTS Defendants' motion for summary judgment.  (Doc. # 25).  The Clerk is **ORDERED** to enter judgment accordingly and to terminate the case upon the docket records of this Court.

**IT IS SO ORDERED.**


      /s/   **Gregory L. Frost**

**GREGORY L. FROST**
**UNITED STATES DISTRICT JUDGE**